# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR BAKER, CDCR #T-19858,<br><br>    Plaintiff,<br><br>vs.<br><br><br>ARNOLD SCHWARZENEGGER, et al.;<br><br>    Defendants. | Civil No.   07-1773 IEG (NLS)<br><br>**ORDER:**<br><br>**(1)  GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b), 12(b)(6) AND 42 U.S.C. § 1997e(a); AND**<br><br>**(2) ORDERING PLAINTIFF TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED AS TO REMAINING DEFENDANTS PURSUANT TO FED.R.CIV.P. 4(m)**<br><br>**[Doc. No. 18]** |

## I.     Procedural Background

Arthur Baker ("Plaintiff"), currently incarcerated at Kern Valley State Prison located in Delano, California and proceeding pro se, filed a Complaint pursuant to 42 U.S.C. § 1983 on September 7, 2007. The Court denied Plaintiff's Motion to Proceed *In Forma Pauperis* ("IFP")

because he failed to provide a certified copy of his trust account statement as required by 28 U.S.C. § 1915(a)(2). (*See* Sept. 21, 2007 Order at 3.) Plaintiff refiled his Motion to Proceed *IFP* on November 20, 2007 [Doc. No. 5]. The Court granted Plaintiff's Motion to Proceed *IFP* but sua sponte dismissed Plaintiff's Complaint for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(b). (*See* Dec. 20, 2007 Order at 6-7.) Nonetheless, the Court provided Plaintiff the opportunity to file an Amended Complaint in order to correct the deficiencies of pleading identified by the Court. (*Id.* at 7.) On January 30, 2008, Plaintiff filed his First Amended Complaint ("FAC") [Doc. No. 7].

The Court then directed the United States Marshal to effect service of Plaintiff's First Amended Complaint pursuant to FED.R.CIV.P. 4(c)(3). Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to FED.R.CIV.P. 12(b) and 12(b)(6) [Doc. No. 18] which is currently before the Court. Plaintiff filed his Opposition on September 26, 2008 to which Defendants filed their Reply.[1]

## II.  **Factual Allegations**

Plaintiff was first housed at Calipatria State Prison ("CAL") on October 31, 2001. (*See* FAC at 5.) At the time he was incarcerated at CAL, prison officials noted in his classification records that he was not, nor had he ever been, affiliated with a prison gang. (*Id.*) On April 27, 2005, Plaintiff was arrested by officers with the "Investigative Security Unit." (*Id.*) Sergeant Crabtree read Plaintiff his *Miranda* rights and told Plaintiff that he had been arrested for attempted murder on a peace officer arising from an attack on Officers Hughey, Steele and Lewis which occurred on April 25, 2005. (*Id.*) Sergeant Crabtree told Plaintiff that members of the "Crips" gang were believed to be responsible for the attack. (*Id.*) Plaintiff informed Sergeant Crabtree that he played no role in these attacks. (*Id.*)

///

///

---

[1] While this matter was referred to Magistrate Judge Nita L. Stormes, for disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and S.D. CAL. CIVLR 72.3, the Court has determined that a Report and Recommendation regarding Defendants' Motion to Dismiss is unnecessary. *See* S.D. CAL. CIVLR 72.3(a).

Plaintiff alleges that because Sergeant Crabtree was "angry" about the attack on the fellow officers, he retaliated against Plaintiff by placing him in a small metal "cage" which was designed to prevent a person from sitting down. (*Id.*) Accordingly, for nearly eight hours Plaintiff claims to have suffered "pain and swelling in his feet, ankles, knees, hips, spine, wrist and shoulders, from the inability to sit inside the cage." (*Id.*) Defendant Crabtree allegedly stated "you want to whine after attacking my officers . . . you deserve more pain than that." (*Id.* at 6.) After approximately eight hours, Plaintiff was transferred to the administrative segregation unit. (*Id.*) He was again placed in a small metal cage. (*Id.*) Plaintiff claims he pleaded for help from correctional officers when his was no longer able to support his body weight and collapsed in the cage. (*Id.*) However, he was ignored by prison staff because Crabtree had told the other prison staff that Plaintiff was responsible for attacking the correctional officers. (*Id.*)

Despite Plaintiff's assertions that he did not participate in the attack, he claims Defendant Hughey conspired to punish "someone Black" for the assault and in a conspiracy with Defendant Leapheart named Plaintiff as one of his attackers. (*Id.* at 11.)

On April 29, 2005, Plaintiff appeared at a preliminary hearing conducted by Captain Leapheart and plead not guilty. (*Id.* at 9.) Plaintiff testified that he was in his cell at the time of the attack and he was not a gang member. (*Id.*) Plaintiff claims that he provided the hearing officers with "irrefutable" proof that he was not a participant in the attack. (*Id.* at 9-10.) In addition, he also claims Defendants Leapheart and Hughey conspired with inmate Granier to falsely claim that they saw Plaintiff join in the attack on the officers even though they knew Plaintiff was in his cell at the time of the attack. (*Id.* at 11.) Plaintiff claims Defendant Stratton, Williams and Tamayo also conspired to falsely accuse Plaintiff of attacking the correctional officers. (*Id.* at 12.) Captain Leapheart found Plaintiff guilty of attempted murder charges. (*Id.* at 10.) Plaintiff claims that as a result of this conviction he became a "target" of prison staff. (*Id.*). Plaintiff lost all general population privileges and was confined indefinitely to administrative segregation. (*Id.*)

/ / /

/ / /

1    Plaintiff was later charged in a Serious Rules Violation Report with attempted murder.
2 (*Id.* at 14.) Lieutenant Jimenez presided at the hearing on July 14, 2005 and found Plaintiff
3 guilty. (*Id.*) Plaintiff claims Defendant Jimenez disregarded the evidence which demonstrated
4 Plaintiff was innocent and told Plaintiff that "I know you were there, and I know that you and
5 your Crip buddies attacked my officers and you're gonna pay for it." (*Id.* at 15.) The findings
6 of Defendant Jimenez was affirmed on September 27, 2005. (*Id.* at 16.) On October 14, 2005,
7 Plaintiff was sentenced to a forty eight (48) month "SHU"[2] term for the attempted murder
8 charge. (*Id.*)

9    Plaintiff filed administrative grievances challenging his disciplinary conviction. An
10 Investigative Employee was then assigned to Plaintiff's case and gathered evidence to support
11 Plaintiff's claim of innocence. (*Id.* at 8.) The Investigative Employee determined that Plaintiff
12 was innocent of the charges because he was "locked inside of his assigned prison cell on April
13 25, 2005 when the attempted murder occurred." (*Id.* at 11.) As a result of these findings,
14 Plaintiff's administrative grievance appeal was granted on April 11, 2006 and he was found "not
15 guilty" of the attempted murder charge. (*Id.* at 16.) Plaintiff was released from the SHU on
16 August 30, 2006. (*Id.*)

17 **III.    Defendants' Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)**

18    Defendants seek dismissal of a portion of Plaintiff's First Amended Complaint for failure
19 to exhaust his administrative remedies pursuant to FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e.

20    **A.    Standard of Review per FED.R.CIV.P. 12(b)**

21    The Ninth Circuit has held that "failure to exhaust nonjudicial remedies is a matter of
22 abatement" not going to the merits of the case and is properly raised pursuant to a motion to
23 dismiss, including a non-enumerated motion under FED.R.CIV.P. 12(b). *Ritza v. Int'l*
24 *Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988); *Wyatt v.*
25 *Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (finding a non-enumerated motion under Rule
26 12(b) to be "the proper pretrial motion for establishing nonexhaustion" of administrative
27 remedies under 42 U.S.C. § 1997e(a)). Unlike under Rule 12(b)(6), "[i]n deciding a motion to
28

---

[2] "SHU" is an acronym for Segregated Housing Unit.

-4-

dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, 315 F.3d at 1120 (citing *Ritza*, 837 F.2d at 369).

### B. Exhaustion of Administrative Remedies per 42 U.S.C. § 1997e(a)

Before the PLRA, prisoners pursuing civil rights claims under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit in federal court. *See Patsy v. Bd. of Regents of Florida*, 457 U.S. 496, 516 (1982). Congress enacted 42 U.S.C. § 1997e(a)'s "invigorated" exhaustion provision, *Porter v. Nussle*, 534 U.S. 516, 524 (2002), as part of the Prison Litigation Reform Act of 1995 ("PLRA") "in an effort to address the large number of prisoner complaints filed in federal court." *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 914 (2007). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 204. "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter*, 534 U.S. at 532.

42 U.S.C. § 1997e(a) has been construed broadly to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," *id.* at 525-26, and to encompass inmate suits about both general circumstances and particular episodes of prison life--including incidents of alleged excessive force. *Id.* at 532. Finally, "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 738, 741 (2001), so long as some "pertinent relief can be obtained through the internal process." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005). "[Proper exhaustion] means ... a prisoner must complete the administrative review process in accordance with the applicable procedural rules ... as a precondition to bring[ing] suit in federal court." *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). However, "failure to exhaust [under § 1997e(a)] is an affirmative defense under the PLRA, and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 217. Instead,

Defendants "have the burden of raising and proving the absence of exhaustion." *Wyatt*, 315 F.3d at 1119.

The State of California provides its prisoners and parolees the right to administratively appeal "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." CAL. CODE REGS., tit. 15 § 3084.1(a) (2007). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing CAL. CODE REGS. tit. 15 § 3084.5). The third or "Director's Level" of review "shall be final and exhausts all administrative remedies available in the Department [of Corrections.]" Cal. Dep't of Corrections Operations Manual, § 54100.11, "Levels of Review;" *Barry*, 985 F. Supp. at 1237-38; *Irvin v. Zamora*, 161 F. Supp. 2d 1125, 1129 (S.D. Cal. 2001).

Finally, prisoners need not identify each individual defendant by name in the grievance process in order to satisfy § 1997e(a)'s exhaustion requirement, as long as the prison's policies do not require such detail. *See Jones,* 127 S. Ct. at 923 ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."); *id.* at 915 (citing *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005) (proper exhaustion requires use of the administrative process provided by the State; if that process does not require identification of specific persons, neither does § 1997e(a)).

**C.     Application of 42 U.S.C. § 1997e(a) to Plaintiff's Case**

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his claim that his property was taken by Defendant Crabtree, including his criminal appeal case file records and other personal property, when he was transferred from general population to administrative segregation following his April 27, 2005 arrest. (Defs.' Ps & As at 13.)

In support of this argument, Defendants provide the Declaration of D. Bell who is the Appeals Coordinator for the California Department of Corrections and Rehabilitation ("CDCR") at CAL. In Bell's Declaration, he states that he "reviewed the Appeal file for [Plaintiff] and

1  found Inmate Appeal Log No. CAL-0-05-01929 in the files as it is kept in the ordinary course
2  of business." (Bell Decl. ¶ 3.) Bell then attaches a copy of this administrative grievance filed
3  by Plaintiff as Exhibit "1." (*Id.* ¶ 4.) A review of this administrative grievance does not show
4  a claim for loss of personal property or a loss of property that resulted in a denial of access to
5  the courts.

6  However, Plaintiff has attached to his Opposition a copy of an administrative grievance
7  he claims to have filed that does address the personal property and access to courts issue.
8  (*See* Pl.'s Req. for Judicial Notice, Exhibit "A.") As stated above, the failure to exhaust "is an
9  affirmative defense under the PLRA." *Jones*, 549 U.S. at 216. The burden for proving non
10 exhaustion falls on the Defendants. Here, the declaration submitted by Defendants is wholly
11 inadequate for this Court to rely on in order to find whether or not Plaintiff exhausted all of his
12 administrative remedies. Bell's Declaration is vague and ambiguous. He indicates that he
13 reviewed Plaintiff's file and found one of his administrative grievances. (Bell Decl. ¶ 3.) There
14 is absolutely no indication whether there were other grievances filed or if there was just that one.
15 Plaintiff has attached a copy of a grievance that is not referenced by Defendant Bell. Based on
16 the information supplied by the Defendants, the Court finds that Defendants have not adequately
17 met their burden to show that Plaintiff did not exhaust his administrative remedies with regard
18 to his property or access to courts claim pursuant to 42 U.S.C. § 1997e(a).[3]

19 **IV.    Defendants' Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6)**

20 Defendants also seek dismissal of Plaintiff's First Amended Complaint pursuant to
21 FED.R.CIV.P. 12(b)(6) on the grounds that he has failed to state a claim upon which § 1983 relief
22 can be granted. In addition, Defendants seek dismissal of Plaintiff's California state law claims.

23      **A.    Standard of Review**

24 A motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6) tests
25 the legal sufficiency of the claims in the complaint. The court must accept as true all material

---

[3] In their Reply brief, Defendants argue for the first time that Plaintiff has failed to state both an access to courts claim and a denial of property claim pursuant to FED.R.CIV.P. 12(b)(6). (Defs.' Reply at 1-4.) The Court will not consider these arguments as it is well settled that issues cannot be raised for the first time in a reply brief. *See Alaska Center for Environment v. U.S. Forest Serv.*, 189 F.3d 851, 858 n. 4 (9th Cir. 1999).

-7-

allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *N.L. Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Where a plaintiff appears pro se, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel."). In giving liberal interpretation to a pro se civil rights complaint, however, a court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (conclusory allegations unsupported by facts are insufficient to state a claim under section 1983). "The plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). "The focus of any Rule 12(b)(6) dismissal ... is the complaint." *Id.* at 1197 n.1.

/ / /
/ / /
/ / /

### B.     Eleventh Amendment

Defendants seek dismissal of Plaintiff's claims to the extent that he is suing them in their "official capacity." (*See* Defs.' Ps & As at 14.)  While the Eleventh Amendment bars a prisoner's section 1983 claims against a state actor sued in his official capacity, it does not bar damage actions against a state official sued in his personal or individual capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992).  When a state actor is alleged to have violated both federal and state law and is sued for damages under section 1983 in his individual or personal capacity, there is no Eleventh Amendment bar, even if state law provides for indemnification. *Ashker v. California Dep't of Corrections*, 112 F.3d 392, 395 (9th Cir. 1997).

Here, Plaintiff brings this § 1983 suit against Defendants in their official capacities. (FAC at 2.)  The Eleventh Amendment imposes no bar to Plaintiff's damages action against Defendants for acts alleged to have been taken in their personal capacity. *See Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).  The Supreme Court has made it clear that a plaintiff can seek damages in a section 1983 action if he alleges facts sufficient to show personal liability through individual actions or omissions, taken under color of state law, which cause the deprivation of Plaintiff's constitutional rights. *Hafer*, 502 U.S. at 25.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss on Eleventh Amendment grounds only to the extent that Plaintiff seeks monetary damages against them in their official capacities.

### C.     Fourteenth Amendment Equal Protection Claim

In his Complaint, Plaintiff alleges that prison officials targeted him for punishment because they had the "intent to punish and retaliate against somebody Black, no matter who, for the attack on [prison staff]." (FAC at 10.)  Thus, Plaintiff alleges that he was singled out because of his race. The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of*

*Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Shaw v. Reno*, 509 U.S. 630 (1993). Prisoners are protected by the Equal Protection clause against discrimination based on race. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

However, conclusory allegations of discrimination are insufficient to withstand a motion to dismiss, unless they are supported by facts that may prove invidious discriminatory intent or purpose. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

As stated above, Plaintiff argues that he was targeted for punishment because Defendants wanted to "punish and retaliate against somebody Black, no matter who, for the attack on [prison staff]." (FAC at 10.) Defendants argue that Plaintiff also alleges that some of the Defendants "knew" Plaintiff was locked in his cell at the time the incident occurred and therefore, the Defendants were not "looking for 'any' African American to blame." (Defs. Ps & As at 17.) Plaintiff clearly alleges that Defendants pursued punishment against him, even knowing that he was not guilty of the crime charged, because of his race. These facts are sufficient to state a Fourteenth Amendment Equal Protection claim. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's Equal Protection claims.

### D. Fourteenth Amendment Due Process Claims

Defendants also argue that the Court should dismiss Plaintiff's due process claims because "Plaintiff has received all the process he was due." (*Id.* at 19.) The Due Process Clause of the Fourteenth Amendment prohibits states from "depriving any person of life, liberty, or property, without the due process of law." U.S. CONST. AMEND. XIV.

1    The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake. *See Wolff*, 418 U.S. at 557-58. In order to invoke the protection of the Due Process Clause, Plaintiff must first establish the existence of a liberty interest. *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. at 484); *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (noting that *Sandin* abandons the mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection).

Defendants do not address *Sandin*, instead Defendants cite to a Second Circuit case, *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), for the proposition that the filing of false disciplinary charges is insufficient to state a due process claim. (*See* Defs.' Ps &As at 18-19.) However, this Second Circuit case, which is not binding on this Court, was decided prior to *Sandin*. In addition, *Freeman* does not hold that prisoners have no Fourteenth Amendment liberty interest in remaining free from false or maliciously disciplinary accusations; *Freeman* holds only that once a liberty interest *has* been implicated, disciplinary proceedings affecting that interest must satisfy the requirements of due process as set forth in *Wolff*. *Freeman*, 808 F.2d at 951 ("Rideout concedes that Freeman had a constitutionally protected right not to be placed in punitive segregation without due process . . . . Rideout, however, also contends that the disciplinary hearing provided Freeman with all the procedural due process to which he was entitled.") (citations omitted).

Because Defendants do not argue that Plaintiff has not established a liberty interest as required by *Sandin*, Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment Due Process claim is **DENIED**.

/ / /

/ / /

### E. Eighth Amendment Conditions of Confinement Claim

Defendants argue that the Court should dismiss Plaintiff's Eighth Amendment claims related to the time that he spent in Administrative Segregation. (Defs.' Ps & As at 20.) "Whatever rights one may lose at the prison gates, ... the full protections of the eighth amendment most certainly remain in force. The whole point of the amendment is to protect persons convicted of crimes." *Spain v. Procunier*, 600 F.2d 189, 193-94 (9th Cir. 1979) (citation omitted). The Eighth Amendment, however, is not a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable. *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Rather, the Eighth Amendment proscribes the "unnecessary and wanton infliction of pain," which includes those sanctions that are "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. This includes not only physical torture, but any punishment incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958)

To assert an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must satisfy two requirements: one objective and one subjective. *Farmer*, 511 U.S. at 834; *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994). "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities." *Id.* This objective component is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Hoptowit*, 682 F.2d at 1246.

In his First Amended Complaint, Plaintiff fails to allege facts sufficient to show that the conditions of confinement while he was housed in the Administrative Segregation unit did not meet the "minimal civilized measure of life's necessities." *Allen*, 48 F.3d at 1087. Accordingly,

1  the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims with
2  respect to the time he spent in the Administrative Segregation unit.[4]

### F. Obstruction of Justice and Retaliation Claims

Defendants also seek dismissal of Plaintiff's claims that the Defendants obstructed justice and retaliated against him in violation of 18 U.S.C. § 1503(a) and 18 U.S.C. § 1513.[5] Defendants argue, and the Court agrees, that these are criminal statutes that do not provide for a private cause of action. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997). In his Opposition, Plaintiff maintains that he is entitled to bring an obstruction of justice claim as private citizen pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Pl.'s Opp'n at 7.) However, Plaintiff does not allege any RICO violations in his First Amended Complaint and raises this statute for the first time in his Opposition. Accordingly, Defendants' Motion to Dismiss Plaintiff's claims brought pursuant to 18 U.S.C. § 1503(a) and 18 U.S.C. § 1513 is GRANTED.

### G. State Law Claims - Penal Code Violations

In his First Amended Complaint, Plaintiff alleges that Defendants Hughey, Gainer and Jimenez filed false reports at his disciplinary hearing in violation of California Penal Code § 118.1. (*See* FAC at 16.) Defendants argue that Plaintiff cannot state a claim based on alleged violations of the California Penal Code.[6]

---

[4] However, to the extent that Plaintiff has alleged an Eighth Amendment claim against Defendant Crabtree, who has not yet appeared in this action, relating to the allegations of being placed in a small metal cage for several hours, those claims remain in this action.

[5] In his First Amended Complaint, Plaintiff has alleged a broader retaliation claim in violation of his First Amendment rights. This issue has not been raised or briefed by Defendants in their Motion. Accordingly, Plaintiff's claims that he has been retaliated against in violation of his constitutional rights survive this motion to dismiss.

[6] While Defendants move to dismiss what they describe as Plaintiff's "claims for violation of California Penal Code sections 118.1, 127, 132 and 134 against various Defendants," Plaintiff's claims actually involve a broader scope of constitutional violations which are not adequately briefed in Defendants' motion. (Defs.' Ps & As at 15.) It is not clear from Plaintiff's First Amended Complaint that he is relying solely on these penal code sections to form the basis of this action. Plaintiff refers more often to claims of conspiracy which are not addressed in Defendants' motion. Thus, Plaintiff's claims for conspiracy remain in this action.

1    To the extent Plaintiff seeks to bring a state law claim against these Defendants, he has failed to state a claim. There is no private cause of action for violation of California Penal Code § 118.1, which makes it a crime for a peace officer to file a report with the agency which employs him or her, regarding the commission or investigation of a crime, in which he or she knowingly and intentionally makes any statement regarding any material matter which the officer knows to be false. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); CAL. PEN. CODE § 118.1. The Court finds that to the extent Plaintiff intended to bring any claim in this action based on a violation of any section of the California Penal Code, he has failed to state such a claim. Therefore, the Court GRANTS Defendants' motion to dismiss any claims presented in this action for violation of state criminal law, and any such claims are dismissed with prejudice.

**H.    False Imprisonment**

Defendants seek dismissal of Plaintiff's state law tort claim of false imprisonment. (Defs. Ps & As at 20 - 21.) Under California state law, the elements of a false imprisonment claim are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.* 80 Cal.App.4th 485, 496 (2000). In Plaintiff's First Amended Complaint, he claims that Defendants are liable for false imprisonment due to their role in holding the administrative disciplinary hearings wherein he was found guilty of assaulting correctional officers. (FAC at 9-19.) However, Defendants argue that even if Plaintiff was able to state a false imprisonment claim against them, they are immune from liability pursuant to California Government Code § 821.6 which provides "a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding with the scope of his employment, even if he acts maliciously and without probable cause." Cal. Govt. Code § 821.6. Thus, these Defendants are immune from liability as to Plaintiff's California tort claim of false imprisonment. *See* Cal. Govt. Code § 821.6.

/ / /

/ / /

1  / / /

2  Accordingly, Defendants' Motion to Dismiss Plaintiff's False Imprisonment claims
3  brought under California State law is GRANTED.[7]

**V.    Unserved Defendants**

A review of the Court's docket indicates that no proof of service has been filed as to Defendants Crabtree, Leapheart, and Ganier. *See Walker v. Sumner,* 14 F.3d 1415, 1421-22 (9th Cir. 1994) (where a pro se plaintiff fails to provide the Marshal with sufficient information to effect service, the court's sua sponte dismissal of those unserved defendants is appropriate under FED.R.CIV.P. 4(m)).

Accordingly, this Court ORDERS Plaintiff to show cause *no later than January 5*, *2009* why the claims against these Defendants should not be dismissed for want of prosecution pursuant to FED.R.CIV.P. 4(m). If Plaintiff wishes to proceed with his claims against these Defendants he must provide the Court with proof of proper service by *January 5, 2009* Otherwise, Defendants Crabtree, Leapheart and Ganier will be dismissed from this action without prejudice.

**VI.   Conclusion and Order**

For all the reasons set forth above, IT IS HEREBY ORDERED that:

(1) Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for failure to exhaust his administrative remedies pursuant to FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a) is DENIED [Doc. No. 18];

(2) Defendants' Motion to Dismiss Plaintiff's claims for monetary damages against them in their official capacity as barred by the Eleventh Amendment is GRANTED [Doc. No. 18];

(3) Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment Equal Protection claim is DENIED [Doc. No. 18];

---

[7] The Court makes no such determination with respect to the remaining unserved Defendants.

(4) Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment Due Process claim is DENIED [Doc. No. 18];

(5) Defendants' Motion to Dismiss Plaintiff's Eighth Amendment conditions of confinement claim pertaining to the time period spent in Administrative Segregation is GRANTED [Doc. No. 18];

(6) Defendants' Motion to Dismiss Plaintiff's Obstruction of Justice and Retaliation claims brought pursuant to U.S.C. § 1503(a) and 18 U.S.C. § 1513 is GRANTED [Doc. No. 18];

(7) Defendants' Motion to Dismiss Plaintiff's claims brought pursuant to the California Penal Code is GRANTED [Doc. No. 18];

(8) Defendants' Motion to Dismiss Plaintiff's California state law False Imprisonment claims is GRANTED [Doc. No. 18]; and

(9) Defendants shall file and serve their Answer to the claims that remain in Plaintiff's First Amended Complaint within ten (10) days of the date this Order is "Filed" pursuant to FED.R.CIV.P. 12(a)(4)(A).

IT IS FURTHER ORDERED that:

(10) Plaintiff must show cause no later than *January 5, 2009* why the claims against the remaining Defendants should not be dismissed for want of prosecution pursuant to FED.R.CIV.P. 4(m). If Plaintiff fails to provide the Court with documentation demonstrating proper service on the remaining Defendants by January 5, 2008, Defendants Crabtree, Leapheart and Ganier will be dismissed from this action without prejudice.

**IT IS SO ORDERED.**

DATED: November 26, 2008

_____
IRMA E. GONZALEZ, Chief Judge
United States District Court

-16-