# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR BAKER, CDCR #T-19858,<br><br>                             Plaintiff,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>                             Defendants. | Civil No.   07cv1773 IEG (NLS)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(c)**<br><br>[Doc. No. 37] |

## I.

### STATEMENT OF THE CASE

Arthur Baker ("Plaintiff"), a state prisoner currently incarcerated at Calipatria State Prison located in Calipatria, California, is proceeding pro se and *in forma pauperis* with a First Amended Complaint ("FAC") filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983.

Currently pending before the Court is Defendants Williams, Jimenez, Hughey, Tamayo and Stratton's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 37].

/ / /

/ / /

/ / /

## II.

## PROCEDURAL BACKGROUND

Defendants Williams, Jimenez, Hughey, Tamayo and Stratton move for summary judgment on the grounds that: (1) no genuine issues of material facts exist to show that they violated Plaintiff's Fourteenth Amendment due process or equal protection rights; (2) no genuine issues of material facts exist to show that they conspired to deprive Plaintiff of his civil rights; (3) no genuine issues of material facts exist to support Plaintiff's retaliation claim; and (4) Plaintiff's property claim should be dismissed.

On October 15, 2009, the Court advised Plaintiff of his rights and obligations to oppose Defendants' Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).[1] Plaintiff filed his Opposition on January 19, 2010 [Doc. No. 43]. Defendants filed their Reply on January 25, 2010 [Doc. No. 44]. In addition, Plaintiff's First Amended Complaint is verified under penalty of perjury. *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (holding that a complaint or motion duly verified under penalty of perjury pursuant to 28 U.S.C. § 1746 may be used as an opposing affidavit under FED.R.CIV.P. 56.).

Having now exercised its discretion to consider the matter as submitted on the papers without oral argument pursuant to S.D. CAL. CIVLR 7.1.d.1, the Court hereby **GRANTS** Defendants Williams, Jimenez, Hughey, Tamayo and Stratton's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 for the reasons set forth in detail below.

---

[1] *Klingele* and *Rand* together require the district court "'as a bare minimum, [to provide a pro se prisoner] with fair notice of the requirements of the summary judgment rule.'" *Klingele*, 849 F.2d at 411 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)). "It would not be realistic to impute to a prison inmate ... an instinctual awareness that the purpose of a motion for summary judgment is to head off a full-scale trial by conducting a trial in miniature, on affidavits, so that not submitting counter affidavits is the equivalent of not presenting any evidence at trial." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (internal quotation omitted). Actual knowledge or any level of legal sophistication does not obviate the need for judicial explanation. *Klingele*, 849 F.2d at 411-12. Thus, the district court is required to "tell the prisoner about his 'right to file counter-affidavits or other responsive materials and [to][ alert[] [him] to the fact that his failure to so respond might result in the entry of summary judgment against him.'" *Jacobsen*, 790 F.2d at 1365 n.8 (quoting *Klingele*, 849 F.2d at 411).

## III.

### DISMISSAL PURSUANT TO FED.R.CIV.P. 4(m)

In the Court's November 26, 2008 Order, Plaintiff was ordered to show cause by January 5, 2009 why the claims against Defendants Crabtree, Leapheart and Ganier should not be dismissed for want of prosecution pursuant to FED.R.CIV.P. 4(m). *See* Nov. 26, 2008 Order at 16. That time has since passed and Plaintiff has failed to properly effect service on these Defendants. In addition, Plaintiff named Defendant Canada in his original Complaint but failed to name him as a Defendant in his First Amended Complaint. Thus, the claims against Defendant Canada are deemed waived. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

Defendants Crabtree, Leapheart, Ganier and Canada are hereby DISMISSED from this action and the Clerk of Court is directed to enter judgment for these Defendants.

## IV.

### PLAINTIFF'S FACTUAL ALLEGATIONS[2]

Plaintiff was first housed at Calipatria State Prison ("CAL") on October 31, 2001. (*See* FAC at 5.) At the time he was incarcerated at CAL, prison officials noted in his classification records that he was not, nor had he ever been, affiliated with a prison gang. (*Id.*) On April 27, 2005, Plaintiff was arrested by officers with the "Investigative Security Unit." (*Id.*) Sergeant Crabtree read Plaintiff his *Miranda* rights and told Plaintiff that he had been arrested for attempted murder on a peace officer arising from an attack on Officers Hughey, Steele and Lewis which occurred on April 25, 2005. (*Id.*) Sergeant Crabtree told Plaintiff that members of the "Crips" gang were believed to be responsible for the attack. (*Id.*) Plaintiff informed Sergeant Crabtree that he played no role in these attacks. (*Id.*)

Plaintiff alleges that because Sergeant Crabtree was "angry" about the attack on the fellow officers, he retaliated against Plaintiff by placing him in a small metal "cage" which was designed to prevent a person from sitting down. (*Id.*) Accordingly, for nearly eight hours Plaintiff claims to have suffered "pain and swelling in his feet, ankles, knees, hips, spine, wrist

---

[2] Defendants offer no testimony or declarations of their own that would contradict Plaintiff's representation of events.

1  and shoulders, from the inability to sit inside the cage." (*Id.*)  Defendant Crabtree allegedly
2  stated "you want to whine after attacking my officers . . . you deserve more pain than that." (*Id.*
3  at 6.)  After approximately eight hours, Plaintiff was transferred to the administrative segregation
4  unit. (*Id.*)  He was again placed in a small metal cage. (*Id.*)  Plaintiff claims he pleaded for help
5  from correctional officers when his was no longer able to support his body weight and collapsed
6  in the cage. (*Id.*)  However, he was ignored by prison staff because Crabtree had told the other
7  prison staff that Plaintiff was responsible for attacking the correctional officers. (*Id.*)

8  Despite Plaintiff's assertions that he did not participate in the attack, he claims Defendant
9  Hughey conspired to punish "someone Black" for the assault and in a conspiracy with Defendant
10 Leapheart named Plaintiff as one of his attackers. (*Id.* at 11.)

11 On April 29, 2005, Plaintiff appeared at a preliminary hearing conducted by Captain
12 Leapheart and plead not guilty. (*Id.* at 9.)  Plaintiff testified that he was in his cell at the time
13 of the attack and he was not a gang member. (*Id.*)  Plaintiff claims that he provided the hearing
14 officers with "irrefutable" proof that he was not a participant in the attack. (*Id.* at 9-10.)  In
15 addition, he also claims Defendants Leapheart and Hughey conspired with inmate Granier to
16 falsely claim that they saw Plaintiff join in the attack on the officers even though they knew
17 Plaintiff was in his cell at the time of the attack. (*Id.* at 11.)  Plaintiff claims Defendant Stratton,
18 Williams and Tamayo also conspired to falsely accuse Plaintiff of attacking the correctional
19 officers. (*Id.* at 12.)  Captain Leapheart found Plaintiff guilty of attempted murder charges. (*Id.*
20 at 10.)  Plaintiff claims that as a result of this conviction he became a "target" of prison staff.
21 (*Id.*).  Plaintiff lost all general population privileges and was confined indefinitely to
22 administrative segregation. (*Id.*)

23 Plaintiff was later charged in a Serious Rules Violation Report with attempted murder.
24 (*Id.* at 14.)  Lieutenant Jimenez presided at the hearing on July 14, 2005 and found Plaintiff
25 guilty. (*Id.*)  Plaintiff claims Defendant Jimenez disregarded the evidence which demonstrated
26 Plaintiff was innocent and told Plaintiff that "I know you were there, and I know that you and
27 your Crip buddies attacked my officers and you're gonna pay for it." (*Id.* at 15.)  The findings
28 of Defendant Jimenez was affirmed on September 27, 2005. (*Id.* at 16.)  On October 14, 2005,

1  Plaintiff was sentenced to a forty eight (48) month "SHU" term for the attempted murder charge.
2  (*Id.*)

3       Plaintiff filed administrative grievances challenging his disciplinary conviction.   An
4  Investigative Employee was then assigned to Plaintiff's case and gathered evidence to support
5  Plaintiff's claim of innocence. (*Id.* at 8.) The Investigative Employee determined that Plaintiff
6  was innocent of the charges because he was "locked inside of his assigned prison cell on April
7  25, 2005 when the attempted murder occurred." (*Id.* at 11.)  As a result of these findings,
8  Plaintiff's administrative grievance appeal was granted on April 11, 2006 and he was found "not
9  guilty" of the attempted murder charge. (*Id.* at 16.)  Plaintiff was released from the SHU on
10 August 30, 2006. (*Id.*)

## IV.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**A.**    **Standard of Review**

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court shall consider all admissible affidavits and supplemental documents submitted on a motion for summary judgment. *See Connick v. Teachers Ins. & Annuity Ass'n*, 784 F.2d 1018, 1020 (9th Cir. 1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970).  However, to avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Rather, he must present "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The Court may not weigh evidence or make credibility determinations on a motion for summary judgment. Quite the opposite, the inferences to be drawn from the underlying facts must be viewed in the light

1  most favorable to the nonmoving party. *Id.* at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The nonmovant's evidence need only be such that a "fair minded jury could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255. However, in determining whether the nonmovant has met his burden, the Court must consider the evidentiary burden imposed upon him by the applicable substantive law. *Id.*

A verified complaint or motion may be used as an opposing affidavit under FED.R.CIV.P. 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam) (complaint); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (motion). To "verify" a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties of perjury." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

**1.     42 U.S.C. § 1983**

Section 1983 authorizes a "suit in equity, or other proper proceeding for redress" against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution." *Nelson v. Campbell*, 541 U.S. 637, 124 S.Ct. 2117, 2122 (2004).

**2.     Plaintiff's Fourteenth Amendment Due Process Claims**

On April 25, 2005, Defendant Hughey, a correctional officer at Calipatria State Prison, was attacked and injured by inmates who were reported to belong to a prison gang. (*See* FAC at 11.) Prison officials came to Plaintiff's cell two days later, read his Miranda rights, and informed him he was being placed under arrest for participating in the attack on prison staff. (*Id.*) Plaintiff was provided a copy of the Rules Violation Report ("RVR") and transferred from general population to Administrative Segregation ("Ad-Seg"). (*See* Defs.' Ex. 1, Pl.'s Depo, p. 31.) Plaintiff was assigned an Investigative Employee, Defendant Tamayo, in preparation for his disciplinary hearing on the RVR. (*Id.* at p. 40:7-22.)

On July 12, 2005, Plaintiff was served with a copy of the report prepared by Defendant Tamayo, along with copies of the Confidential Information Disclosure Forms ("CDCR 1030")

(FAC, Ex. 1, Second Level Appeal Response, Log No. CAL-0-05-01929, dated April 11, 2006.) Plaintiff claims that Defendant Tamayo "pretty much" did everything Plaintiff asked him to do in preparation for his RVR hearing. (Pl.'s Depo. p. 43.)

Plaintiff's RVR hearing was held on July 14, 2005. (*Id.*; FAC, Ex. 1., Second Level Grievance Response.) The Senior Hearing Officer was Defendant Jimenez. (*Id.*) At this hearing, Plaintiff plead "not guilty" to the charges. (*Id.*) Plaintiff was found "guilty of violating CCR 3005(c), for the specific act of Attempted Murder of a Peace Officer" and assessed a loss of yard and phone privileges. (FAC, Ex. 1, Second Level Grievance Response.) Defendant Jimenez referred Plaintiff to the Institutional Classification Committee ("ICC") to recommend an assessment for the Security Housing Unit ("SHU"). *Id.* On October 14, 2005, the ICC "assessed and imposed a 48-month midrange SHU Term with a Minimum Early Release Date (MERD) of April 25, 2008." (*Id.*)

The Due Process Clause prohibits states from "depriving any person of life, liberty, or property, without the due process of law." U.S. CONST. AMEND. XIV. The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). In order to invoke the protection of the Due Process Clause, Plaintiff must first establish the existence of a liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. at 484); *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (noting that *Sandin* abandons the mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection).

Thus, "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not

1  the language of regulations regarding those conditions but the nature of those conditions
2  themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 125 S.Ct. at 2394.
3  The *Sandin* test requires a case-by-case examination of both the conditions of the prisoner's
4  confinement and the duration of the deprivation at issue. *Sandin*, 515 U.S. at 486.  Here, it is
5  undisputed that Plaintiff was housed in a more restrictive environment when he was housed in
6  Ad-Seg for approximately a year. (*See* Defs.' Sep. Stmt. Uncontested Facts at 63.)   This is
7  sufficient to find that Plaintiff has established a protected liberty interest under *Sandin*.

8  The Court must now determine whether there is a genuine issue of material fact as to
9  whether Plaintiff's due process rights were violated at his disciplinary hearing. *Wilkinson*, 545
10 U.S. at 225. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full
11 panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 539.
12 Due process in connection to a disciplinary hearing requires that the prisoner receive: 1) written
13 notice of the charges against him; 2) a brief period of time to prepare for the hearing; 3) a written
14 statement by the factfinder regarding the facts relied upon and the reasons for the disciplinary
15 action; 4) an opportunity to call witnesses and present documentary evidence; and 5) an
16 opportunity to seek the aid of a fellow inmate or prison staff for complex matters. *Id.* at 563-70.

17 Here, Plaintiff admits that he received written notice of the charges against him. (*See*
18 Pl.'s Depo. at 31.) Plaintiff was provided an Investigative Employee, Defendant Tamayo, to
19 prepare for his disciplinary hearing. (*Id.* at 40.) Plaintiff has stated that he asked Defendant
20 Tamayo to question the correctional officers involved and other inmates who were witnesses on
21 the day that the attack occurred. (*Id.*) Plaintiff admits that Defendant Tamayo did everything
22 Plaintiff asked him to do in preparation for his disciplinary hearing. (*Id.* at 43.) Plaintiff admits
23 that he was given a written statement regarding the facts that were relied on by Defendant
24 Jimenez that were the basis of his decision to find Plaintiff guilty. (*Id.* at 44.) Plaintiff was
25 given the opportunity to call witnesses and present his own evidence. (*Id.*) While Plaintiff
26 objects to the *validity* of the information that Defendant Jimenez relied upon, that is not enough
27 to overcome the fact that there is no triable issue of material fact as to whether Plaintiff's due
28 process rights were violated. Plaintiff's own testimony indicates that prison officials met all the

requirements of procedural due process as outlined by *Wolff*. Defendants' Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment Due Process is **GRANTED**.

### 3. Fourteenth Amendment Equal Protection Claims

Plaintiff's claim is not entirely clear but he claims in his First Amended Complaint, along with his Opposition to Defendants' Motion, that he was targeted because he is African-American. The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Shaw v. Reno*, 509 U.S. 630 (1993).

When an equal protection violation is alleged, the plaintiff must establish facts to show that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Plaintiff must present evidence that Defendants acted with an intent or purpose to discriminate against him based on his membership in a protected class. *See Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Here, other than the allegation itself, Plaintiff fails to demonstrate how the actions of the Defendants were based on an intent to discriminate against him based on his race. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment Equal Protection claims is **GRANTED**.

### 4. Conspiracy Claims

Plaintiff also alleges that the named Defendants conspired to deprive him of his constitutional rights when they presented and relied upon false evidence to convict him of a rules violation. To prevail on a claim of conspiracy under § 1983, however, Plaintiff must demonstrate facts with sufficient particularity to show an agreement or a meeting of the minds

to violate his constitutional rights. *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (conclusory allegations of conspiracy insufficient to support a claim under section 1983 or 1985). Here, there is no indication in the record that there is any evidence of conspiracy to deprive Plaintiff of his civil rights. *Woodrum*, 866 F.2d at 1126; *Aldabe*, 616 F.2d at 1092. Thus, Defendants' Motion for Summary Judgment as to Plaintiff's conspiracy claims is **GRANTED**.

### 5.  Retaliation Claims

Defendants also seek summary judgment of Plaintiff's First Amendment retaliation claim. Plaintiff alleges that prison officials were retaliating for the attempted murder on staff and he received the "brunt" of their anger because "someone had to pay." (Pl.'s Depo. at 119.)  In order to prevail on a claim of retaliation, Plaintiff must be able to prove the following five factors: "(1) An assertion that a state actor took some adverse action against [Plaintiff]; (2) because of (3) [Plaintiff's] protected conduct, and that such action (4) chilled [Plaintiff's] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005) (citing *Resnick v. Hayes,* 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam)).

While Plaintiff has alleged that an adverse action was taken against him, there are no allegations that the action taken was due to any "protected conduct" on Plaintiff's part. Plaintiff claims he was unfairly targeted because Defendants were looking to blame someone for the attack on correctional staff but he fails to show any evidence that any of his First Amendment rights were "chilled." Moreover, Courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland,* 65 F.3d 802*,* 806-807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). Thus, the burden is on the prisoner to establish facts which

1  demonstrate "that there were no legitimate correctional purposes motivating the actions he
2  complains of." *Id.* at 808. Plaintiff offers no evidence to meet his burden of proof to overcome
3  Defendants' assertion that they acted with a legitimate penological purpose when they placed
4  Plaintiff in Ad-Seg.  Because Plaintiff has failed to provide facts or evidence to support his
5  retaliation claim, Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claims
6  is **GRANTED**.

### 6. Access to Courts claim

Plaintiff also claims that Defendants confiscated his property which included materials related to his pending criminal matter. (*See* FAC at 18.)   Prison officials who deliberately interfere with the transmission of a prisoner's legal papers, or deny him access to a legitimate means to petition for redress for the purpose of thwarting his litigation may violate the prisoner's constitutionally protected right to access to the court. *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996); *Vandelft v. Moses*, 31 F.3d 794, 796 (9th Cir. 1994).  However, Plaintiff must be able to demonstrate a specific actual injury involving a nonfrivolous legal claim, *Lewis*, 518 U.S. at 351-55, and must allege facts showing that he "could not present a claim to the courts because of the [Defendants'] failure to fulfill [their] constitutional obligations." *Allen v. Sakai*, 48 F.3d 1082, 1091 (9th Cir. 1994).  The right of access is only guaranteed for certain types of claims: direct and collateral attacks upon a conviction or sentence, and civil rights actions challenging the conditions of confinement. *Lewis*, 518 U.S. at 354.  Even among these types of claims, actual injury will exist only if "a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353 & n.3.  Thus, an inmate must plead facts sufficient to show that prison officials have actually frustrated or impeded a nonfrivolous attack on either his sentence or the conditions of his confinement. *Id.* at 352-53.

Here, Defendants argue that Plaintiff has failed to satisfy the "actual injury" requirement of an access to courts claim. Defendants provide Plaintiff's deposition testimony in which he admits that the temporary loss of his criminal trial records did not cause him to miss any deadlines and he was, in fact, preparing a new habeas petition. (*See* Pl.'s Depo. at 41-42.)

Moreover, Plaintiff must be able to adequately demonstrate the "underlying cause of action." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff alleges no facts to show that his claim was either a direct and collateral attack upon his conviction or sentence or a civil rights actions challenging the conditions of confinement and that it was "nonfrivolous." *See Lewis*, 518 U.S. at 353, 354. Accordingly, Defendants are entitled to summary judgment on Plaintiff's access to court's claim.

## V.

### CONCLUSION AND ORDER

For all the reasons set forth in the Order the Court hereby: **GRANTS** Defendants Williams, Jimenez, Hughey, Tamayo and Stratton's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 37]. In addition, Defendants Crabtree, Leapheart, Ganier and Canada are **DISMISSED** from this action pursuant to FED.R.CIV.P. 4(m). The Clerk of Court is directed to enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: February 10, 2010

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**